IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>   v.<br><br>ARTUR STEPANYAN,<br><br>           Defendant.<br>_____/ | No. 3:15-cr-00234-CRB<br><br>**ORDER REMANDING MAGISTRATE'S DENIAL OF BAIL** |

     Defendant Artur Stepanyan appeals Magistrate Judge Jacqueline Scott Corley's decision to deny him bail following a detention hearing on July 10, 2015. See Appeal (dkt. 186). At that hearing, Magistrate Judge Corley indicated she was prepared to release Stepanyan on bond under a series of conditions discussed previously at a hearing on June 18. See Transcript July 10 (dkt. 178) at 7. However, Magistrate Judge Corley ultimately declined to release Stepanyan based on the Government's representations that if Stepanyan were to be released, he would immediately be taken into United States Immigration and Customs Enforcement ("ICE") custody pursuant to an outstanding immigration detainer issued either July 6 or July 9. See id. This Court disagrees that the existence of an outstanding immigration detainer or order of removal, or the risk that Stepanyan will be taken into ICE custody, is a sufficient reason to deny Stepanyan bail under the Bail Reform Act. Accordingly, the Court REMANDS the bail determination to Magistrate Judge Corley in light of this opinion.

The Government represented to Magistrate Judge Corley that Stepanyan was the subject of one or more immigration detainers issued in the last few days or weeks in connection with the instant offense. See Transcript July 10 at 3–4, 6–8. In its reply to Stepanyan's appeal, the Government contends—apparently for the first time—that Stepanyan has an extant warrant of removal issued on or about June 8, 2001 based on the fact that he is an aggravated felon by virtue of his prior conviction for health care fraud. See Gov't Response (dkt. 199) at 5.[1] According to the Government, the fact that Stepanyan may be taken into immigration custody if released by this Court disqualifies him from release. But Congress begs to differ. The Government's argument skips over—without a single word about—"the very statute in which Congress reconciles the release and detention statutes with the administrative deportation statutes." See United States v. Adomako, 150 F. Supp. 2d 1302, 1307 (M.D. Fl. 2001); see generally Gov't Response. In fact, "Congress expressly instructs this Court to disregard the laws governing release in INS deportation proceedings when it determines the propriety of release or detention of a deportable alien pending trial." Adomako, 150 F. Supp. 2d at 1307. Under Section 3142(d) of the Bail Reform Act, "if the court determines that the defendant is not a United States citizen or a lawfully admitted permanent resident and may flee or pose a danger to any other person or the community, it shall detain him for no more than ten days and direct the government's attorney to notify the appropriate immigration official. If such official does not take the defendant into custody during that ten day period, the defendant 'shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.'" United States v. Chavez-Rivas, 536 F. Supp. 2d 962, 964 (E.D. Wis. 2008) (quoting 18 U.S.C. § 3142(d)).[2] If

---

[1] The Government told Magistrate Judge Corley only that an ICE official mentioned that Stepanyan "was ordered removed on June 8th, 2001" but the Government maintained that the July 6, 2015 detainer was the basis for a denial of bail. See Transcript July 10 at 4, 6–8.

[2] In full, as relevant here, the statute states as follows: "(d) Temporary detention to permit revocation of conditional release, deportation, or exclusion. — If the judicial officer determines that such person . . . is not a citizen of the United States or lawfully admitted for permanent residence, as defined in section 101(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(20)); and such

2

this Court were to countenance the Government's "complain[ts that] it needs protection from ICE and its threat of expulsion," such that "any defendant encumbered by an ICE detainer must be detained pending trial or sentence, . . . Congress's carefully crafted detention plan, set forth at 18 U.S.C. § 3142, would simply be overruled by an ICE detainer." See United States v. Barrera-Omana, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009).

Of course, "[a]n alien's INS history (to the extent that the government chooses to present it in support of its motion for detention) is . . . a factor that this Court weighs heavily in the risk of flight analysis under 18 U.S.C. § 3142(g)(3)," as with any other factor that could influence the risk of flight in a normal bail determination under the Bail Reform Act. See Adomako, 150 F. Supp. 2d at 1307; Chavez-Rivas, 536 F. Supp. 2d at 964 n.3, 968. But for the Government to argue that Stepanyan's status as a deportable alien itself bars him from release is incompatible with the clear directives of § 3142(d). In fact, the Ninth Circuit reversed a district court who took precisely the same action, on precisely the same grounds, that the Government proposes here. In United States v. Castro-Inzunza, No. 3:11-cr-00418-MA, 2012 WL 1952652 (D. Or. 2012), the government argued that "because defendant's custody will be transferred to ICE and his removal will make him unavailable for trial, there are no conditions which will reasonably assure his presence for trial." Id. at *4. In agreeing, the district court was "especially persuaded by the rationale of the district court in United States v. Lozano, 2009 WL 3834081"—the same Lozano, and in fact the very same quote from Lozano, that the Government urges this Court to rely on here—and denied bail on the grounds that there is "'no factual scenario under which the court can reasonably assure [the defendant's] appearance at trial after his deportation,'" which would effectively give the defendant a "'get out of jail free card.'" See Castro-Inzunza, 2012 WL 1952652 at *7

---

person may flee or pose a danger to any other person or the community; such judicial officer shall order the detention of such person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service. If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." 18 U.S.C. § 3142(d).

(quoting Lozano, 2009 WL 3834081 at *4); see also Gov't Response at 5–6 (citing Lozano, 2009 WL 3834081 at *4, for the proposition that there is "no factual scenario under which the court can reasonably assure Mr. Lozano's appearance at trial after his deportation," and that to allow release would be to give defendants a "get out of jail free card.").

Unfortunately for the Government, the Ninth Circuit reversed. See United States v. Castro-Inzunza, No. 12-30205, 2012 WL 6622075 (9th Cir. 2012). The Ninth Circuit held that "[t]he district court erred in finding that the government met its burden of showing, by a preponderance of the evidence, that 'no condition or combination of conditions will reasonably assure the [defendant's] appearance.'" Id. at *1 (quoting 18 U.S.C. § 3142(e), (g)). It then explained that "[t]he government also has failed to meet its burden to show that the district court may not assure defendant's appearance at trial by, for example, requiring the surrender of his passport and any other travel documents; enjoining him from obtaining or using any new travel documents; or enjoining the government from interfering with his ability to appear at trial." Id. And perhaps most important for the instant case, the Ninth Circuit went on to hold that "the government has not shown that it lacks the ability to stay or defer defendant's removal through a stay or departure control order if it believes that his removal before trial would be contrary to public interest." See id.

Nor has the Government made any such showing here. To the extent it addresses a delay of removal at all, the Government states that Stepanyan is "not merely the subject of an immigration detainer," but rather "the subject of a warrant of removal issued" nearly fifteen years ago, on June 8, 2001, pursuant to a prior conviction for health care fraud. See Gov't Response at 5. "Accordingly," the Government contends, "the defendant is subject—by statute—to mandatory removal, generally within 90 days, under 8 U.S.C. §§ 1231(a)(1)(A) and (a)(1)(B)(iii)."[3]

Setting aside the fact that the considerable length of time in which Stepanyan has not

---

[3] In any event, it appears that the 90-day period of removal for Stepanyan might not commence until after final judgment in this matter even if Stepanyan were to be on pre-trial release, although that determination is beyond the scope of this Order. See United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167, 1174–75 (D. Or. 2012); United States v. Blas, No. 13-0178-WS-C, 2013 WL 5317228, at *5 (S. D. Ala. Sept. 20, 2013).

4

been deported since June 2001 calls into question the imminent urgency of this order of removal, the Government has made no showing that these circumstances deprive it of the "ability to stay or defer defendant's removal through a stay or departure control order." See Castro-Inzunza, 2012 WL 6622075 at *1. "[A] departure control order issued pursuant to 8 C.F.R. § 215.2" blocks the removal of an alien whose "departure would be prejudicial to the interests of the United States under the provisions of § 215.3." Unites States v. Anaya-Acosta, 629 F.3d 1091, 1093 (9th Cir. 2011); 8 C.F.R. § 215.2(a). Section 215.3, in turn, states that "[t]he departure from the United States of any alien within one or more" enumerated categories "shall be deemed prejudicial to the interests of the United States." One of those categories, subsection (g), covers "Any alien who is needed in the United States as a witness in, or as a party to, any criminal case under investigation or pending in a court in the United States: Provided, That any alien who is a witness in, or a party to, any criminal case pending in any criminal court proceeding may be permitted to depart from the United States with the consent of the appropriate prosecuting authority, unless such alien is otherwise prohibited from departing under the provisions of this part." 8 C.F.R. § 215.3(g). This seems both clear and applicable. The "government has not shown that it lacks the ability to stay or defer defendant's removal through a stay or departer control order" under Stepanyan's circumstances, see Castro-Inzunza, 2012 WL 6622075 at *1, and the Court sees no reason in § 215.3(g) why it could not.

In any event, this Court sees no grounds on which Congress has authorized this Court to disregard the plain language of § 3142(d) and take those immigration consequences into account for a bail determination, except insofar as they impact the Stepanyan's risk of flight. See 18 U.S.C. § 3142(d); Chavez-Rivas, 536 F. Supp. 2d at 964 n.3 ("Congress's directive to the executive in 8 U.S.C. § 1231(a) does not authorize me to disregard its directive to the courts in 18 U.S.C. § 3142(d). . . . Put another way, it is not the job of the judicial branch to carry out the executive branch's obligations."). "The Bail Reform Act does not permit this court to speculate on the 'risk' that a defendant would not appear in this court due to his being removed from this country by the same government that is prosecuting him." United

States v. Montoya-Vasquez, No. 4:08CR3174, 2009 WL 103596, at *4 (D. Neb. Jan. 13, 2009). That Stepanyan might be taken into custody by ICE to undergo whatever processes the executive branch sees fit "are issues that are simply not for this court's review" in making a bail determination under the Bail Reform Act, except insofar as they weigh upon Stepanyan's risk of flight or dangerousness. See id.; 18 U.S.C. 3142(d) ("If the official fails or declines to take such person into custody [after being notified of the judicial officer's determination that the person is a non-citizen and may flee or pose a danger to any other person or the community], such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.") (emphasis added).[4]

Speaking of "risk of flight": The Government cites to a few district court cases that have settled upon a semantic loophole to wriggle out of the Bail Reform Act's clear strictures to treat Stepanyan like any other defendant in the course of making a bail determination. See, e.g., United States v. Campos, No. 2:10-mj-6-SRW, 2010 WL 454903 (M.D. Ala. Feb. 10, 2010); Lozano, 2009 WL 3834081; see also United States v. Ramirez-Hernandez, 910 F. Supp. 2d 1155 (N.D. Iowa 2012). These few cases conclude that the fact that a defendant will be taken into ICE custody if released on bail, and thereafter potentially deported, is itself a "risk of flight," in that the defendant could "flee" and "fail to appear" for criminal proceedings by virtue of being forcibly deported by the immigration authorities. To the extent that those cases are distinguishable on the grounds that those courts considered the defendant's deportation to be both certain and imminent—while here, the Government's proffered order of removal has been in place for well over a decade with no deportation in sight—the Court so distinguishes them. See Ramirez-Hernandez, 910 F. Supp. 2d at

---

[4] The Court does not concern itself here with whether ICE may validly detain Stepanyan based on his pre-existing order of removal from 2001. But "[w]hat neither ICE nor any other part of the Executive Branch may do . . . is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the [Bail Reform Act]." Trujillo-Alvarez, 900 F. Supp. 2d at 1179; see also id. at 1178 ("[N]othing permits ICE (or any other part of the Executive Branch) to disregard the congressionally-mandated provisions of the [Bail Reform Act] by keeping a person in detention for the purpose of delivering him to trial when the [Bail Reform Act] itself does not authorize such pretrial detention.").

6

1158–59 ("Under these circumstances, removal is not uncertain and speculative," but rather "present[s] 'the relatively unusual case of a defendant for whom detention and removal by the immigration authorities prior to the conclusion of prosecution appeared to be a certainty.'") (quoting United States v. Lozano, No. 1:09cr158-WKW, 2009 WL 3052279, at *6 (M.D. Ala. Sept. 21, 2009)).

To the extent those cases are not readily distinguishable, this Court sees no support for their linguistic gymnastics in the clear directives of the Bail Reform Act, and declines to follow their lead. Two of these cases, Campos and Ramirez-Hernandez, do not even cite, let alone discuss the consequences of, § 3142(d). See generally Campos, 2010 WL 454903; Ramirez-Hernandez, 910 F. Supp. 2d 1155. One, at least, seeks support for its conclusion in the district court opinion in Castro-Inzunza that, as discussed above, was subsequently reversed by the Ninth Circuit. See Ramirez-Hernandez, 910 F. Supp. 2d at 1159 (citing United States v. Castro-Inzunza, 2012 WL 1952652, to distinguish—as the Government attempts to do here—a detainer from a "valid, enforceable removal order"). And all attach an odd, non-volitional meaning to "risk of flight" that does not comport with any source of which this Court is aware. Compare, e.g., 18 U.S.C. § 3146 (explaining that "[i]t is an affirmative defense to a prosecution [for failure to appear] that uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender"), and United States v. Carolina Casualty Ins. Co., 237 F.2d 451, 452 (7th Cir. 1956) (stating that "[t]he general rule seems to be that bail will not be forfeited where performance is rendered impossible by the act of God, or of the law, or of the obligee" and that the involuntary induction of the defendant into the army or other "control exercised over him by the Government" can discharge a bond obligation), with the Government's citation to Lozano, 2009 WL 3434081, at *2 (finding support for the opposite conclusion, that deportation ensures non-appearance and therefore certainty of "flight", in the "penumbra of common sense that should play as well in the local Wal-Mart as in the halls of justice."). As such, this Court agrees with the many district courts that have concluded that "[i]f the

7

1 government—through ICE or any other authority—prevents [a defendant's] appearance, he
2 has not 'failed' to appear" within the meaning of the Bail Reform Act and, as such, the risk
3 of removal by ICE "cannot be determinative of the question of a defendant's eligibility for
4 release" consistent with § 3142(d). E.g., Montoya-Vasquez, 2009 WL 103596, at *5; United
5 States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167, 1176–77 (D. Or. 2012).

6     To be clear, the Court does not deny that immigration consequences are relevant to a
7 defendant's "risk of flight" in the bail determination, as that phrase has always been
8 understood: that a defendant could, of his own volition, abscond to escape the consequences
9 of prosecution, perhaps made more onerous by the risk of deportation. But to conclude that
10 the risk of deportation is itself a "risk of flight" would categorically bar defendants facing
11 removal from the possibility of bail, in clear contravention of Congress's strictures to treat a
12 defendant who has not been taken into custody by immigration officials during the
13 notification period "in accordance with the other provisions of [section 3142],
14 notwithstanding the applicability of other provisions of law governing release pending trial
15 or deportation or exclusion proceedings." See 18 U.S.C. § 3142(d) (emphasis added);
16 Montoya-Vasquez, 2009 WL 103596, at *5 ("If the court could consider as determinative the
17 speculative probabilities that a defendant would be removed from this country by ICE once
18 he is placed in ICE custody, it would effectively mean that no aliens against whom ICE
19 places detainers could ever be released on conditions. Such a harsh result is nowhere
20 expressed or even implied in the Bail Reform Act. . . . If Congress wanted to bar aliens with
21 immigration detainers from eligibility for release, it could readily have said so, but did not.").

22     Accordingly, the Court disagrees with Magistrate Judge Corley's bail determination
23 insofar as it denied bail on the ground that Stepanyan might be released into ICE custody.
24 The Court will not speculate on the possible results of pending immigration proceedings
25 involving the defendant, and leaves it to the Government to avail itself of the tools at its
26 disposal to manage deportation proceedings in light of the pending criminal prosecution, the
27 Government having made no showing here that it cannot. Moreover, the Government
28 represented to this Court and to Magistrate Judge Corley that ICE has been on notice of

Stepanyan's presence at least since July 6 and has not taken him into custody, which requires this Court to treat Stepanyan like any other defendant under the Bail Reform Act.[5] See Gov't Response at 6 (stating that an immigration detainer has been in place since July 6); Transcript July 10 at 3–4 (describing the Government's correspondence with an ICE agent on July 6, in which the agent "confirmed . . . that he filed immigration detainer on [Stepanyan]" that same day based on his determination "that [Stepanyan] was ordered removed on June 8, 2001"). In light of the foregoing, the Court REMANDS the bail decision to Magistrate Judge Corley to complete her determination whether the Government has borne its burden of showing that there are no conditions of release that mitigate the risk of flight.

**IT IS SO ORDERED.**

Dated: July 23, 2015

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[5] See Chavez-Rivas, 536 F. Supp. 2d at 964 ("[T]he magistrate judge did not temporarily detain defendant under § 3142(d) at the initial appearance; rather, he simply entered a detention order under § 3142(f). Nevertheless, ICE has been notified of defendant's presence and has not taken him into custody, instead lodging a detainer. That being the case, § 3142(d) requires me to treat defendant like any other offender under the Bail Reform Act."); Adomako, 150 F. Supp. 2d at 1307 ("The Court could have ordered Adomako temporarily detained for not more than ten days, and could have directed the attorney for the government to notify the appropriate INS official. However, when the matter first came to the undersigned duty magistrate judge's attention, the INS already knew of his arrest and the parties were prepared for a dispositive detention hearing. Therefore, as directed by Congress in 18 U.S.C. § 3142(d), this Court properly applied the normal release and detention rules to the deportable alien without regard to the laws governing release in INS deportation proceedings.").

9