BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

DAMALI A. TAYLOR (CABN 262489)
MARC PRICE WOLF (CABN 254495)
CLAUDIA A. QUIROZ (CABN 254419)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
damali.taylor@usdoj.gov
marc.wolf@usdoj.gov
claudia.quiroz@usdoj.gov

Attorneys for United States of America

Mary McNamara, SBN 147131
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Attorneys for Defendant ARMAN DANIELIAN
(filing jointly on behalf of all defendants for purposes of this motion only)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 15-0234 CRB |
| Plaintiff, | **JOINT MEMORANDUM RE TRIAL GROUPINGS AND TRIAL SETTING** |
| v. | |
| ARA KARAPEDYAN, et al, | |
| Defendant. | |

The parties hereby file this joint memorandum setting forth their views on trial groupings and trial setting.  The defense and government have different views on the composition of groups, but both parties recommend that the first trial group be set for trial no earlier than September 2017.

**Government View**

During the last status conference on July 27, 2016, the government informed the Court that the parties had met and conferred, at which time the government proposed three separate trial groups comprised of 9, 10 or 15 defendants per group.  Those three proposed groups are as follows:

**Financial Crimes Group (money laundering, identity theft and bank/wire fraud):**

1) Maxwell Starsky; 2) Gevork Ter-Mkrchyan; 3) Artin Sarkissians; 4) Dmitry Kustov; 5) Loui Artin; 6) Michael Inman; 7) Hripsime Khachtryan; 8) Ararat Yesayan; 9) Tigran Sarkisyan; and 10) Ara Karapedyan.[1]

**Drug Diversion Group:** 1) Mihran Stepanyan; 2) Artur Stepanyan; 3) David Miller; 4) Yan German; 5) Javier Ramirez; 6) Arman Danielian; 7) Araxia Nazaryian; 8) Stanley Azrilyan; 9) Arman Zargaryan; 10) Alexander Soliman; 11) Michael Ashegian; 12) Marc Ashegian; 13) Cheryl Barndt; 14) Eric Figueroa; and 15) Hugo Marquez.

---

[1] With the dismissal of the four Ohio cooperators from the instant case, government counsel has removed them from the list and combined all of the drug diversion defendants into a single trial group.  This group of 15 is by far the largest proposed trial group.  The government is confident that this group will get smaller.  Notwithstanding, should the Court have concerns about the size of this second group, the government could comfortably break it into two subgroups comprised of those primarily involved in the MIC drug diversion scheme and those involved in the Maroon Pharma/Fox Heathcare drug diversion scheme.

**Tax Fraud/Treasury Check Group:** 1) Khachig Geuydjian; 2) Ilia Nalbans; 3) Asatour Magzanian; 4) Arman Petrosyan; 5) Lanna Karapedyan; 6) Sevak Gharghani; 7) Jean Dukmajian; 8) Karine Dukmajian; and 9) Angela Dukmajian.

The government suggested the three above groups with the understanding that each of the groups will get significantly smaller as defendants enter guilty pleas pre trial. Indeed, plea discussions are already well under way with a number of the defendants. As the government explained to the Court during the status conference, in the governments view, suggesting any more than three trial groups would prove unworkable. The government respectfully submits that the defendants' proposal of *seven* different trial groups is inadvisable and should be rejected. A few of the defense proposed groups contain as few as four defendants. Were the Court to adopt the seven separate trial groups the defense proposes, the government expects that the parties and the Court would need to revisit and re-do the trial groups in short order and multiple times. This would make trial preparation and case management impossible.

Moreover, the three trial groups suggested by government counsel make the most sense from an evidentiary perspective. It is certainly the case that some defendants fit comfortably in more than one group—for example, the Asheghians were involved in both drug diversion and bank/wire fraud, and Gevork Ter-Mkrchyan was involved in drug diversion, bank/wire/mail fraud, and murder for hire, to boot. However, with the above groups, the government tried to best reflect the primary scheme in which the defendants were involved.

Finally, the government notes that the defense's portion of the joint statement (below) delves into a number of additional matters that have nothing to do with the trial groupings. For example, the defense makes a number of erroneous representations about the state of discovery. The defense also suggests that they haven't received and cannot proceed without early disclosure

of Jencks Act material. [2]  They further ask that the Court order the government to produce such material six months before trial. The defense even attempts to tee up a severance argument for defendant Ter-Mkrtchyan, who is involved in virtually every crime listed in the indictment.  Not only does the government wholly disagree with these representations and/or requests, to the extent the defense makes these requests instead of filing appropriate motions, the government asks that they be denied.

**Defense View**

    Thirty-four defendants remain to be tried out of the thirty-eight who were originally charged.  The  superseding indictment charges seven separate conspiracies alleging criminal conduct over a span of six years and encompassing alleged racketeering activity, distribution of unlicensed wholesale pharmaceuticals, identity theft, access device fraud, mail, wire and bank fraud, money laundering and the outlier charge -- murder-for-hire.  This is not a gang case – it is a case involving disparate groups of defendants in three separate but at times interlocking sets of offenses 1) the distribution of unlicensed wholesale pharmaceuticals (medications in the lower drug schedules, generally not opioids); 2) financial crimes involving proceeds of the pharmaceuticals distribution and the filing of tax returns and 3) a murder-for-hire conspiracy.

    The substantive count of murder-for-hire conspiracy is charged against only two defendants, Ara Karapedyan (1) and Gervork Ter-Mkrtchyan (4), but it is alleged as a purpose of the RICO enterprise and a part of the racketeering conspiracy against all twenty-four of the defendants charged in the RICO conspiracy count.  Superseding Indictment ¶¶ 31(d); 33(a).  The

---

[2] This representation is erroneous.  In reality, the defense has already received the majority of the Jencks Act material in this case.  For example, there are approximately 309 FBI reports which describe interviews of witnesses who will likely testify for the government at trial.  The government has already produced 188 of them in discovery.  There are approximately 280 recordings of witnesses who will likely testify for the government.  Of those recordings, 202 have already been provided to the defense.  The government has agreed to provide the remainder of the Jencks Act material three months before trial.

murder-for-hire allegation appears to the defense to be related to Karapedyan and Ter-Mkrtchyan **_only_** (these defendants also strongly dispute its sufficiency against them).  The discovery affirmatively establishes that the alleged murder-for-hire conspiracy had nothing to do with any other defendant and nothing to do with any of the other conduct charged in the indictment.

Apart from the anomalous nature of the murder-for-hire allegation, there appears to be great variation in the strength of the evidence on the RICO count vis-à-vis the twenty-four defendants who are charged in it (although, as discussed below, the manner in which discovery has been produced makes it difficult to ascertain the nature of the evidence against many of the lower-level defendants).  For example, thousands of pages of financial and other records have been produced as to some of these defendants and very little as to many of the others.  Ten defendants are not charged in the RICO conspiracy at all, but are charged with various substantive counts involving financial or wholesale drug distribution offenses, again with great variation in the evidence against them.  One defendant, Ilia Nalbans (38), is charged solely with Forging Endorsements on Treasury Checks (counts 8-23).

Complicating matters further, as the Court is aware, defendants Mirhan Stepanyan (2), Artur Stepanyan (3), David Miller (28) and Miller's Minnesota corporation, the Minnesota Independent Cooperative ("MIC"), were charged with, *inter alia*, conspiracy to engage in the unlicensed wholesale distribution of drugs in federal district court in Ohio, in a case entitled *United States v. Miller, et al*, CR 15-52, SD Ohio.  On May 18, 2016, the Ohio case was formally transferred to the Northern District of California (DKT # 599).  The government has not made a decision as of yet whether the Ohio case will be consolidated with this case and has just made Ohio case discovery available to the defense as of September 9.

The defense is not prepared for trial at this time and will not be trial-ready before production of cooperator materials.  Here is why:  The superseding indictment is largely bereft of overt act allegations.  The discovery is not helpful in notifying some of the lower-level defendants of the evidence against them, particularly as to the financial crimes conspiracies.  The

Court denied defendant Danielian's (13) bill of particulars motion at an earlier stage,[3] before Rule 16 discovery closed.  Now that Rule 16 discovery has closed, the deficiencies asserted in the bill of particulars motion remain.  Other defendants report the same sorts of problems.  There is no master index of the entirety of the discovery which runs to hundreds of thousands of pages (there are partial indices which identify many documents related to some defendants and some charges).[4]  The case remains difficult to understand for several of the lower-level defendants. Efforts in meet and confer sessions to identify particular documents from the discovery that are pertinent to each defendant have failed to produce a means to identify evidence on specific charges against several of the defendants.

It appears that the heart of the case against many of these defendants may reside in the cooperator/Jencks Act materials.  While the government has committed to quantify the cooperator/Jencks Act materials by the September 14 appearance, the circumstances require specific case management measures from the Court so as to permit basic preparation by defense counsel.  Specifically, the defense asks the Court to require <u>production of all cooperator material six months before trial and that it be strongly encouraged to produce all Jencks Act material on the same deadline</u>.[5]

---

[3]  DKT ## 374 (motion), 456 (opposition), 487 (reply), 582 (order).

[4]  The defense has paid thousands of dollars to convert government-produced tiff files into searchable pdfs in an effort to prepare for trial.

[5]  The court possesses inherent power "to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly."  *United States v. W.R. Grace*, 526 F.3d 499, 508–09 (9th Cir. 2008).  "Judges in this district have applied the inherent powers identified in *Grace* to set pretrial discovery and disclosure deadlines. For example, in *United States v. Ortiz*, No. 12–cr–00119 SI, Judge Susan Illston ordered the government to disclose 'forthwith' all non-Jencks discovery in its possession or control, subject to a heightened protective order. 2013 WL 450199, at *3 (N.D. Cal. Feb.5, 2013). In *United States v. Cerna,* 633 F.Supp.2d 1053, 1058 (N.D. Cal. 2009), Judge William Alsup concluded that 'district courts have the authority, upon a proper record, to exercise their discretion to require non-*Jencks Brady* material to be disclosed prior to the commencement of trial.' And recently in *United States v. Walter Liew,* No. 11–cr–00573 JSW, Judge Jeffrey White ordered that the government identify

One further important factor in setting trial dates:  there remains the entirety of the discovery in the Ohio case, estimated at *2.3 million pages*.  While counsel for Miller and the two Stepanyans have had access to that discovery from their involvement in that case, none of the remaining defendants has, and it is not clear how that production might affect their cases.

With these considerations in mind, the defense proposes that the first trial group be set for no sooner than September 2017.  No order of trial is suggested  – the order in which each group goes to trial is of course at the discretion of the Court.  Defendant Ara Karapedyan (1) remains unassigned by the defense.  He is the only defendant in custody and thus, it is proposed that the Court assigns him to a group after hearing from Karapedyan's counsel.

**MIC Drug Distribution Group**

   Stepanyan, Mihran (2)
   Stepanyan, Artur (3) [Trial Conflict:  2/13/17-3/1/17;[6] maternity leave
        February to August 2017]

   David Miller (28)  [Trial Conflict: 2/20/17-2/24/17; 4/1/17-4/30/17][7]

   Yan German (34)


**Murder for Hire Group – Count 6 (murder-for-hire conspiracy) to be tried separately from all other groups**

   Ara Karapedyan (1)

   Gevork Ter-Mkrtchyan (4)

**Drug Distribution Group -- Defendants who are pharmacies-related – to be divided into two trial groups, based on RICO status:**

all documents and objects that it intends to use in its case-in-chief at trial by May 30, 2013, before a trial date was set. Dkt. No. 294 (Not For Publication), filed 4/10/2013."  *United States v. Cervantes*, No. 12-CV-00792 YGR NC, 2013 WL 2299622, at *3 (N.D. Cal. May 24, 2013).

[6]  Thomas Mesereau will be in a capital trial in Jefferson County, AL in People v. Charleston Wells, case number CC 16-20 (Hon. David Hobny).  Co-counsel Karen McConville is due to give birth in February 2017 and will be on maternity leave until August 2017.

[7]  KC Maxwell has an arbitration set for the last week of February 2017 and a trial the entire month of April 2017.

**Subgroup (a)  RICO Drug Distribution Defendants**

Danielian (13)

Marquez (18)

Zargaryan (19)

Azrilyan (36)

**Subgroup (b) Non-RICO Drug Distribution Defendants**

Nazaryian (22)

Alexander Soliman (23) [Trial Conflicts: from 11/1/16 to 4//25/2017 and from 6/6/17 to 7/1517][8]

Barndt (24)

Eric Figueroa (25) [Trial Conflicts: 1/3/2017-4/7/2017][9]

Marc Ashegian, (26)

---

[8] Peter Johnson has several trials scheduled in the Central District of California.  CR 14-00684 DDP, United States v. Jackson, et al., Defendant Bryan Salgado, beginning 11/1/2016 with an estimated length of three weeks; CR 16-00316 AB, United States v. Ponce, et al., Defendant Alberto Preciado-Gutierrez, beginning 12/6/2016 with an estimated length of one week.; CR 14-00338 SJO (AB), United States v. Martinez, et al., Defendant Gregory Donte Gordon, beginning in January 2017 with an estimated length of four weeks; CR 16-00390 R, United States v. Loza, et al., Defendant Christina Franco, beginning 03/14/2017 with an estimated length of four weeks; CR14-00648 CAS, United States v. Isspunani, et al., Defendant Harinder Singh, beginning 4/4/2017 with an estimated length of three weeks; CR 15-00474 PSG, United States v. Miller, et al., Defendant Gregory Hearns, beginning 06/06/2017 with an estimated length of two weeks; and CR 15-00334 PSG, United States v, Grey, et al., Defendant Gloria Ortega, beginning 07/11/2017 with an estimated length of four weeks.

[9] Humberto Diaz has several trial scheduled in the Central District of California.  CR 14-0338 SJO, United States v. Martinez, et al., Defendant Joshua Perez, beginning 1/3/2017 with an estimated length of 4 weeks, minimum; CR 14-0152 FMO, United States v, Zbicki, beginning 1/17/2017 with an estimated length of one week; CR 13-0537 BRO, United States v. Laredo, et al., Defendant Oscar Avila-Olivera, beginning 2/17/2017 with an estimated length of three weeks; CR 13-0822 ODW, United States v. Bracken, et al., Defendant Dell Hester, beginning 2/14/2017 with an estimated length of three weeks; and CR 16-0390 R, United States v. Loza, et al., Defendant Jaime Villalba, beginning 3/10/2017 with an estimated length of four weeks.

Michael Ashegian (27) [Trial Conflicts: 9/27/2016-11/18/2016][10]

**Money Laundering/Tax/ID Theft Group -- Defendants to be divided into three trial groups based on RICO status and subject matter**

    **Subgroup (a)  RICO Money Laundering Defendants**

        Ter-Mkrtchyan (4)

        Petrosyan, Arman (6)

        Karapedyan, Lanna (7)

        Gharghani (9)

        Artin (17)

        Kustov (20)

    **Subgroup (b)  RICO Tax Return Fraud & Miscellaneous Fraud Defendants**

        Geuydjian (5)

        Starsky (8)

        Dukmajian, Jean (10) [Trial Conflicts: Summer or Fall of 2017][11]

        Dukmajian, Karine (11)

        Dukmajian, Angela (12)

        Magzanyan (14)

        Sarkisyan, Tigran (15)

        Khachtryan (16)

        Sarkissians, Artin (35)

    **Subgroup (c)  Non-RICO financial offense defendants**

        Inman (21)

---

[10] Vicki Podberesky has three trials scheduled.  People v. Martinez, case no. BA423669 beginning 11/7/2016 with an estimated length of two weeks; People v. McNeil, case no. BA403666 beginning 10/18/2016 with an estimated length of five weeks; and People v. Robinson, case no. BA435637, beginning 9/27/2016 with an estimated length of four days.

[11] Garo Ghazarian will have a murder trial in Los Angeles Superior Court, People v. Kasiewicz, et al., case no. GA097117.  While no trial date has been scheduled it is anticipated the trial will begin in the summer or fall of 2017.

1      Ramirez (33)

2      Yesayan (37)

3      Nalbans (38)

4

5 DATED: September 12, 2016     Respectfully submitted,

6
                BARBARA J. VALLIERE
7                Attorney for the United States
                Acting Under Authority Conferred by
8                28 U.S.C. § 515

9

10             _____/s/_____
                DAMALI A. TAYLOR
11                MARC PRICE WOLF
                CLAUDIA A. QUIROZ
12                Assistant United States Attorneys

13

14

15 Dated: September 12, 2016     Respectfully submitted,

16             _____/s/_____
17                Mary McNamara
                August Gugelmann
18                SWANSON & McNAMARA LLP
                Attorneys for Arman Danielian, filing
19                jointly on behalf of all defendants for
                purposes of this memorandum only
20

21

22

23

24

25

26

27

28